DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHINHAYI COLEMAN CADET (CABN 194542)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5596
    FAX: (408) 535-5081
    Chinhayi.cadet@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 18-00081 CRB |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| STEVEN BROWN, | |
| Defendant. | |

UNITED STATES' SENTENCING MEMORANDUM
CR 18-00081 CRB

## I. INTRODUCTION

### A. Indictment

On February 27, 2018, a Grand Jury in the Northern District of California issued an Indictment, charging Steven Brown with nine counts of wire fraud in violation of 18 U.S.C. § 1343.

### B. Guilty Plea

On March 27, 2019, the defendant pled guilty to Count One of the Indictment. In pleading guilty, Brown admitted that beginning no later than in or about December 2012, and continuing to approximately April 2015, he devised and executed a scheme and artifice to defraud victims as to material matters in order to obtain money and property from them by means of materially false and fraudulent pretenses, representations, and promises, and by concealment and omission of material facts, with a duty to disclose.

Specifically, Brown admitted that he owned and operated Better Property Management ("BPM"), a California business entity incorporated under the laws of the State of California. BPM maintained offices in San Francisco, California. A number of homeowners associations ("HOAs") in the San Francisco Bay Area, including but not limited to HOA #1 (located on the 200 block of Telegraph Hill Boulevard in San Francisco, California), HOA #2 (located on Keystone Way in San Francisco, California), HOA #3 (located on the 800 block of Castro Street in San Francisco, California), HOA #4 (located on the 6800 block on Geary Boulevard in San Francisco, California), and HOA #5 (located on the 3400 block on 25th Street in San Francisco, California), hired BPM to manage their buildings and finances. As part of managing HOA finances, Brown opened bank accounts on behalf of the HOA's when they hired him. At the time of the offense, he was the sole signor on the HOA accounts.

Brown further admitted that, as part of the scheme and artifice to defraud, he moved money fraudulently and without authorization, or in excess of the authorization that he had been granted by the HOAs, from HOA bank accounts over which he had been entrusted by HOAs into personal and business bank accounts held by him and jointly with his family members. Brown conducted the unauthorized and excess transfers both to enrich himself and to prevent detection of the ongoing scheme. Brown did not inform the HOAs who had entrusted him with their funds that he had fraudulently initiated payments to

himself, and concealed and hid, and caused to be concealed and hidden, the acts done and the purpose of the acts done in furtherance of the scheme. Brown initiated bank transactions from the Mission National Bank accounts of HOAs as if they were authorized in his role as property manager for HOAs, thus misrepresenting to the bank that these were authorized and lawful transactions, when they were in fact not. Brown did not inform the HOAs that he had fraudulently obtained and converted the funds, and then intentionally delayed giving account statements and other bank information to the HOAs. Brown created the false appearance that the funds he fraudulently converted were not so converted by falsifying Mission National Bank HOA account statements and providing those statements to the HOAs.

Brown also admitted that, during the scheme, he conducted banking transactions at the Mission National Bank branch located at 3060 16th Street, San Francisco, California. Brown maintained a bank account for HOA #1 at Mission National Bank, which account was numbered ending -8770 ("-8770 Account"). He maintained two accounts at Mission National Bank that he used to pay his personal expenses. Brown's personal bank accounts were numbered ending -9080 ("-9080 Account") and -7780 ("-7780 Account"). Brown understands that all online transfers between bank accounts at Mission National Bank and all of the miscellaneous debits from accounts at Mission National Bank are controlled and processed electronically by Mission National Bank's automated clearinghouse, Fiserv. As Fiserv server locations are in West Des Moines, Iowa, and Lewisville, Texas, his online transfers between bank accounts and his miscellaneous debits from accounts at Mission National Bank all occurred in interstate commerce.

Brown further admitted that the promises and representations he made to victims during his scheme were false, that they were material, and that he acted with the intent to defraud. On January 17, 2014, as alleged in Count One of the Indictment, for the purpose of carrying out an essential part of his scheme, Brown knowingly caused a wire transfer of $20,000 from HOA #1's -8770 Account to his personal -9080 Account, which was transmitted by means of wire communications in interstate commerce.

Brown admitted that, during the course of the scheme, he converted at least $230,496.58 from HOAs that he managed. Brown converted $24,898.97 from HOA #1, $87,297.61 from HOA #2, $107,350.00 from HOA #3, and $10,950.00 from HOA #5. Brown admits that his scheme caused at

least $230,496.58 in losses to his victims, all of which constitutes relevant conduct under the United States Sentencing Guidelines.

## II.   SENTENCING GUIDELINES CALCULATIONS

### A.   The Sentencing Guidelines Post-Booker

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases. *Booker*, 543 U.S. at 259 (noting that the Sentencing Reform Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals; see also *United States v. Cantrell*, 433 F.3d 1296, 1279 (9th Cir. 2006) (noting that the [c]ontinuing duty of district courts to consult the Guidelines is statutory). This Court, having calculated the guideline range, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for Defendant.

### B.   Brown's Guidelines Calculations

Brown has a Base Offense Level of 7 pursuant to U.S.S.G. § 2B1.1(a)(1). The defendant is responsible for a loss of $230,496.58. Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), if the loss is more than $150,000, but less than $250,000, the offense level increases by 10 levels. As Brown has pled guilty, he is entitled to a 3-level reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1. As Brown abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense, he receives a 2-level increase pursuant to U.S.S.G. § 3B1.3. Consequently, Brown has a Total Offense Level of 16. Brown has a Criminal History Category I. A Total Offense Level of 16 and a Criminal History Category I results in an advisory guideline imprisonment range of 21-27 months. Under the sentencing guidelines and Section 3553(a), a sentence of 21 months is appropriate in this particular case.

## III.   STATUTORY SENTENCING FACTORS

<u>Nature and Circumstances of the Offense</u>

Consideration of Brown's 3553 factors reveals that a 21-month sentence is appropriate in this case. The HOAs in this case hired Brown to manage their buildings and finances, and Brown had a trusting relationship with the victim HOAs that he violated by taking their money. Brown opened bank accounts on behalf of the HOA's when they hired him, and he made himself the sole signor on the HOA

accounts. Brown controlled the HOA funds, and as the only person who received bank statements directly from the bank for the HOA accounts, Brown was able to disburse the HOA funds without the HOAs having knowledge. Brown induced the HOAs to relax their vigilance they would ordinarily exercise in a number of ways, including complex movements of funds between bank accounts over which he had authority, and disguising the true disposition of funds that he falsely converted by falsifying bank statements and sending those falsified statements to his victim clients. Over the course of his 2012-2015 scheme, Brown converted over $200,000 from HOAs that he managed.

Victim Impact

HOA #2 submitted a victim impact statement, and they indicated their funds were depleted for a few years, and that they are slowly recovering. HOA #1 also submitted a victim impact statement, and they noted that the case caused a tremendous loss of time and effort.

Need for Restitution/Acceptance of Responsibility Issues

In restitution, Brown should pay the following amounts to his victims: $9,500.00 to HOA#1, $50,086.36 to HOA #2, 6,350.00 to HOA #3, and $15,000 to Farmers Insurance (which paid a claim to HOA #1 for Brown's fraud). This yields a grand total of $80,936.36.

Funds transferred by Brown into the five victim HOA accounts gives rise to the difference between the $230,496.58 loss amount and the $80,936.36 restitution amount set forth in the Plea Agreement. Brown's previous payments to the victims do not constitute an above-average acceptance of responsibility in this particular case, given that much of the money he used to repay the victims was from other inappropriate sources, and not from his own legitimate funds. For example, the repayment figure includes Brown's deposit of a $101,000 check into one of the HOA accounts from an unrelated company that trusted Brown. The case agent spoke with the owners of that company, and the owners did not authorize that their money be used to pay back an HOA (the money was instead for an unrelated investment). As Brown later repaid the $101,000 to that company, no restitution is owed to that company. However, improperly using another trusting victim's money to repay other victims does not constitute above-average acceptance of responsibility. In contrast, this conduct further demonstrates Brown's complex movement of funds between accounts of his victims to hide his fraudulent conduct.

As another example, Brown also paid some amounts from the Better Property Management Trust

1  Account number ending -8270.  Those funds are held in the trust account on behalf of owners of
2  properties managed by Brown, and given the numerous entities involved and the complex transfer and
3  intermingling of funds, any victims that may have been impacted by his fraud in connection with the
4  trust account are not readily identifiable.  Certain credits to the HOA accounts were taken from the trust
5  account, and that trust account is the subject of an accusation against Brown by the California Bureau of
6  Real Estate.  Brown has not made an above-average acceptance of responsibility by making
7  unauthorized complex transactions between accounts over which he abused his position of trust.

      Of note, the offense conduct in this case occurred over the course of numerous years.  Brown's abuse of his victims' trust and his complex unauthorized movement of money between the accounts to enrich himself and to conceal his illegal conduct warrants a custodial sentence.  Unlike many who resort to criminal activity to support themselves, the defendant had the benefit of a college education and held a Real Estate Broker License.  A custodial sentence of 21 months is warranted in Brown's case given the nature of the conduct, the abuse of his victims' trust, the purposeful and long-term nature of his offense conduct, and the financial and emotional harm it has caused to the victims.

## IV.  CONCLUSION

      For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the Sentencing Guidelines and the factors set forth in Section 3553(a), sentence Defendant Steven Brown to 21 months in prison, three years of supervised release, a $100 special assessment, and restitution in the total amount of $80,936.36.  The total amount of requested restitution includes $9,500.00 to HOA#1, $50,086.36 to HOA #2, 6,350.00 to HOA #3, and $15,000 to Farmers Insurance.

DATED:  July 3, 2019                                      Respectfully submitted,

                                                                                             DAVID L. ANDERSON
                                                                                             United States Attorney

                                                                                        _____/s/_____
                                                                         CHINHAYI COLEMAN CADET
                                                                         Assistant United States Attorney