Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
   vs.                         )   No. CR 18-0081 CRB
                               )
STEVEN BROWN,                  )
                               )   San Francisco, California
              Defendant.       )   Friday
                               )   November 22, 2019
_____)   11:00 a.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiff:**          DAVID L. ANDERSON
                            United States Attorney
                            150 Almaden Boulevard
                            Suite 900
                            San Jose, California 95113
                    **BY:   CHINHAYI COLEMAN CADET**
                            **ASSISTANT UNITED STATES ATTORNEY**


**For Defendant:**          OFFICES OF DOUGLAS L. RAPPAPORT
                            260 California Street
                            10th Floor
                            San Francisco, California 94111
                    **BY:   DOUGLAS L. RAPPAPORT, ESQ.**

                            J.P. SHERIDAN LAW
                            601 Montgomery Street
                            Suite 850
                            San Francisco, California 94111
                    **BY:   JOANNA SHERIDAN, ESQ.**


**Also Present:**           **JOSEPH L. SCHATZ, ESQ.**

*Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR*
              *Official Reporter - US District Court*
              *Computerized Transcription By Eclipse*

**Friday - November 22, 2019**                    **11:16 a.m.**

                    **P R O C E E D I N G S**

                        **---oOo---**

         **THE CLERK:**  Calling Criminal Action CR 18-0081, USA

versus Steven Brown.

         **MS. CADET:**  Good morning, Your Honor.  Chinyahi Cadet

for the United States.

         **MR. RAPPAPORT:**  Good morning, Your Honor.  Douglas

Rappaport.

         **MS. SHERIDAN:**  Joanna Sheridan on behalf of

Mr. Brown, who is approaching the podium, Your Honor.

    (Defendant present, out of custody.

         **PROBATION OFFICER:**  Good morning, Your Honor.  Brian

Casai from Probation, standing in for Jill Spitalieri.

         **THE COURT:**  This is essentially a continuation of a

sentencing; that we had an early proceeding, but we didn't

proceed with sentencing at that time because of the Court's

concern about whether the allegations that the loss was greater

than that which was found in the Presentence Report.

    And the parties have filed a stipulation, which the Court

has reviewed, which seems satisfactory, stating to the effect

that this amount, the added amount, is not relevant conduct and

should not be considered by the Court in terms of the loss

calculation.

         **MS. CADET:**  Yes, Your Honor.

1          **THE COURT:**  It doesn't render that information

2    irrelevant because of the 3553(a) factors, but it does -- it

3    does inform the Court's judgment as to what the appropriate

4    Sentencing Guideline range is.

5          The Presentence Report finds an Offense Level of 16, a

6    Criminal History Category of I., which is a Guideline range of

7    21 to 27 months.

8          Is there a -- have you reviewed it with your client

9    Mr. Rappaport?

10          **MR. RAPPAPORT:**  I have, Your Honor.

11          **THE COURT:**  And that's before any departures or

12    variances are employed?

13          **MR. RAPPAPORT:**  Correct.

14          **THE COURT:**  Okay.

15          So I understand, and I don't know whether the -- the

16    reason that the Court had some concern was because of a letter

17    it had received from counsel for --

18          **MS. CADET:**  For Terry Kleid.

19          **THE COURT:**  -- Terry Kleid.

20          And I think that it would be appropriate for the Court to

21    hear from counsel for Terry Kleid, if counsel wishes to address

22    the Court.

23          **MS. CADET:**  That's fine with the Government, Your

24    Honor.

25          **THE COURT:**  Okay.  Yes, sir.  Do you want to come

```
 1   forward?

 2              MR. SCHATZ:  Yes.

 3              THE COURT:  And would you identify yourself, and

 4   we'll take it from there.

 5              MR. SCHATZ:  I'm Joseph Schatz, Your Honor.  Good

 6   morning.  I am the attorney for Terry Kleid in the civil matter

 7   that's referred to in the letter that you received.

 8              THE COURT:  Yes.

 9       Okay.  So you are aware obviously of what the Court's view

10   is as to whether or not this is relevant conduct, but I want

11   to -- I want to give you the opportunity to say anything you

12   want to say in connection with the sentencing.  Even though I

13   don't know that you are, quote, a victim of this offense, I

14   think that anything that you might want to bring to the Court's

15   attention, you should be permitted to do so.

16       And that's my view of sentencing.  It may not be other

17   judges' view of sentencing, but it happens to be my view of

18   sentencing.  So you may proceed.

19              MR. SCHATZ:  Thank you very much, Your Honor.  I very

20   much appreciate that opportunity.

21       The joint stipulation that counsel for the -- for

22   Defendant Brown and the prosecution filed states that:

23              "Relevant conduct includes all acts or omissions

24        of the defendants done to avoid detection for the

25        offense of conviction."
```

1          One of the things that was done is to move money from my

2      client's account and other victims' accounts into other

3      people's accounts that had money taken, including the HOAs for

4      which he has been charged.

5          So the reason that was done was to avoid or delay

6      detection as long as possible and, therefore, I think that the

7      other thefts that are mentioned in my letter can be used to

8      affect the Sentencing Guidelines.

9          In other words, it's not the case that they don't meet the

10     requirement since the money was moved around to plump up the

11     HOA accounts to avoid detection for as long as possible.

12          Second, the issue of restitution is relevant here because

13     it's mentioned in the joint statement that he made some

14     restitution, but the defendant has never said what he did with

15     the money that he took from everybody else.  He's taken

16     approximately ten times the 230,000 mentioned in this

17     memorandum.  And since money is fungible, it's odd-to say that

18     he should be given credit or more merciful treatment by the

19     Court for having made restitution.

20          As far as my client is concerned, he's made restitution,

21     to the extent that he's done it, with her money.

22          And then the last issue is the common purpose matter,

23     which is mentioned in the joint Sentencing Memorandum.  I think

24     it's a mistake to treat Mr. Brown's theft from the HOA as

25     unique.  His purpose was to steal money from everybody whose

1   property who he was managing, not just the HOA.  He was

2   stealing money from rental property owners and other people.

3          As the Department of Real Estate found, he --

4          **MR. RAPPAPORT:**  Your Honor, may I object.  At this

5   point this is multiple layers of hearsay.  And I understand

6   that he is an advocate and he has a position here.  He is not a

7   victim.  He has a position in this matter.  He is advocating

8   for his client to obtain restitution.

9          **THE COURT:**  Well --

10          **MR. RAPPAPORT:**  In a real estate matter that is

11   separate and apart from the theft.

12          **THE COURT:**  But he's making his argument.  I'm

13   listening to his argument.

14          His argument is that he disagrees with the stipulation.

15   He thinks -- he thinks that -- his argument is that, number

16   one, she ought to be treated as a victim because her funds were

17   used to, one, avoid detection; and, two, to make, in part, the

18   restitution that the Court is considering in terms of the

19   overall 3553(a) factors.  That's his argument.  I understand

20   his argument.

21          And I'll get to you, Mr. Rappaport, as to how you want to

22   respond to the argument.  But I think it's entirely appropriate

23   that he be permitted to state what his argument is.  He simply

24   disagrees with the stipulation -- not simply.  He disagrees

25   with the stipulation.  He says it's not an accurate stipulation

1   as to the facts.

2       I think in a sentencing proceeding an individual does have

3   the right to come forward and maintain that they are a victim

4   and does have the right to say that the stipulation is

5   erroneous.  I think, that's what sentencing hearings are about,

6   in part.

7       And so I don't -- I'm going to overrule your objection

8   right now, but, of course, when counsel is finished, I'll turn

9   to you and ask you what your position is.

10      That can be part of your position.  I understand that.

11  But it doesn't -- it doesn't preclude counsel from making the

12  argument.

13          MR. RAPPAPORT:  My argument was he's going far afield

14  here.  He can address the issues that the Court --

15          THE COURT:  I don't think he's going far afield.

16  He's saying -- I don't think he's going far afield.  He's

17  saying what I just said he said.  That seems to me directly on

18  point.

19          MR. RAPPAPORT:  Yes.  My objection was when he

20  started talking about the Bureau of Real Estate.

21          THE COURT:  Oh, that I don't know.  Oh, I see.

22          MR. RAPPAPORT:  That is where I --

23          THE COURT:  There is nothing in front of me about the

24  Department of Real Estate.

25          MR. RAPPAPORT:  He mentioned it.  That's where I

1    imposed my objection.

2              **THE COURT:**  Okay.  Well, then I understand that, and

3    I'll hear you at any length you wish to be heard.

4         Go ahead, sir.

5              **MR. SCHATZ:**  If the Court would want to receive proof

6    of the findings of the Department of Real Estate or if any of

7    the other -- for example, a judgment in the civil case that I

8    mentioned in the letter, in the *Stanway* case, where defendant

9    Brown has been found liable for the theft of $200,000, I would

10   be happy to provide it.

11        I can provide live witnesses, if the Court wants, on the

12   subject of whether money taken from some accounts was used to

13   plump up the HOA accounts to avoid detection.  I'm happy to do

14   that, if the Court would want me to do it.

15        And those are the three areas of the stipulation that I

16   disagree with, Your Honor.  And I appreciate the opportunity to

17   have been heard.

18             **THE COURT:**  Okay.  Thank you.

19        Mr. Rappaport.

20             **MR. RAPPAPORT:**  Thank you.

21        Well, Mr. Schatz, with all due respect, is a very

22   competent counsel and he does have a position here, is that

23   there is a civil matter pending against Mr. Brown.

24        What Mr. Brown has done in prior civil matters for

25   purposes of settling other civil matters is not for this Court

1  to consider.  It's a cost effective means of resolving

2  litigation.  He has not been found liable here.

3        THE COURT:  Well, so, what about his -- I thought in

4  listening to what he said he said there is a judgment that has

5  been rendered for $200,000 against the defendant on

6  circumstances arising out of misappropriation of funds.

7     Is there a judgment?

8        MR. RAPPAPORT:  It's just a resolution --

9        THE COURT:  Well, a judgment is a resolution.  A lot

10  of things is a resolution.  I'm just trying to figure out

11  what -- he said a judgment.  Is there a judgment?  I mean,

12  that's a different situation than a settlement.

13        MR. SCHATZ:  Yes, Your Honor.  There has been a

14  judgment.  It was filed --

15        THE COURT:  Do you have a copy of the judgment?

16        MR. SCHATZ:  I don't have it with me.  I mentioned it

17  in the letter, and I cited the superior court case number.  I

18  had been told that I would be lucky to be heard at all, so I

19  didn't bring all of that with me.  But I would be happy to

20  provide that judgment.

21        THE COURT:  What is the judgment?

22        MR. SCHATZ:  The judgment is for -- it was for

23  200,000-odd -- actually, it was for $200,000 exactly, stolen

24  from a woman named Nancy Karen Daly Stanway in exactly the

25  manner that he took money from my client, Ms. Kleid, and also

1    from the HOA.  He just embezzled it from her accounts.

2          And the plaintiff in that case, Stanway, who was

3    represented by the Cotchett firm, obtained judgment by summary

4    judgment motion in San Francisco Superior Court.

5          My case has been stayed for the last two years at the

6    request of Defendant Brown to prevent me from going forward.

7    Otherwise, we would probably have a judgment, too.

8                **THE COURT:**  What can you tell the Court about the

9    judgment?

10               **MR. RAPPAPORT:**  I was not his counsel.  My

11   understanding is -- and this is why we're going far afield, is

12   there was a stipulated judgment.  There was no jury.  There was

13   no court trial.  It was a stipulated judgment to resolve a

14   separate and unrelated real estate venture like Ms. Kleid's

15   here.  That is what I understand.

16         There was no finding of malfeasance.  It was a resolution

17   of a civil matter.  Totally wholly outside of this Court's

18   purview for purposes of sentencing.  It's a civil matter.

19               **THE COURT:**  Not having seen the judgment, I don't

20   know what it is.  It's a stipulated judgment.  It just says: I

21   owe this money.  I owe this money to you.

22         I mean, that's -- I mean, that is sort of neither here nor

23   there, is it?  If it's a judgment in which there is a

24   recitation or a finding, a recitation of fraud or malfeasance

25   or something of that nature, then I think that that's a

```
 1   different story.
 2        If it's simply, I owe you $200,000 and, yes, that's the
 3   judgment, then that is the judgment.  I don't know that it's
 4   anything more than that.
 5        MR. RAPPAPORT:  My understanding is -- and, again,
 6   it's based on information and belief.  It was a resolution of a
 7   civil matter; there were no adverse findings here.  It was
 8   simply a settlement of the civil -- of a real estate venture.
 9        MR. SCHATZ:  Your Honor --
10        MR. RAPPAPORT:  Suffice it to say that I don't want
11   to get into this because this isn't an area where -- that we
12   should be addressing here before this Court.
13        Mr. Schatz has made his statement on behalf of his client.
14   The Government and I are both far more familiar with the facts
15   of this case than Mr. Schatz.  We are far more familiar with
16   the law as it relates to the relevant conduct here in this
17   case.
18        Now, while he has an axe to grind and would certainly like
19   his client to receive restitution through the Government, the
20   fact is that he has filed a civil suit and that suit --
21        THE COURT:  I don't know that I -- number one, I
22   don't -- well, he makes the argument that his client is a
23   victim.  That's the argument.  Because her funds were used to
24   effectuate some restitution in the case.
25        Let's assume, just for the moment, that's true.  If that
```

```
 1    were true, why wouldn't his client be entitled to restitution?
 2    If that's true?  If his client -- his client's money was used
 3    to effectuate restitution, why wouldn't that be -- why wouldn't
 4    that be --
 5              MR. RAPPAPORT:  He would qualify as a victim.
 6              THE COURT:  Pardon?
 7              MR. RAPPAPORT:  He would qualify as a victim, yes.
 8              THE COURT:  Yes.  So that's what he's saying.
 9              MR. RAPPAPORT:  And I appreciate his statements.
10              THE COURT:  But there is no -- it's an allegation.
11    I don't -- I mean, I think your argument basically is these are
12    all allegations, and the Court doesn't have the evidence in
13    front of it to make those determinations.  They are
14    allegations.
15         And as a matter of fact, with respect to his client, it's
16    in the -- the litigation has been stayed or pending.  It hasn't
17    achieved a resolution.  And based upon that, I'm not going to
18    consider it because they are basically allegations.
19         But I think technically, legally he's correct that if, in
20    fact, the money was used for purposes of -- well, I know what I
21    might do.  I know what I might do.  I know exactly what I'm
22    going to do.
23         Which is, as to restitution, I'm going to continue a
24    restitution hearing, that part of the sentencing, for a
25    particular period of time and permit counsel to present any
```

1  evidence he has that his client -- that his client qualifies as

2  a victim for purposes of restitution.

3          **MR. SCHATZ:**  Thank you, Your Honor.

4          **THE COURT:**  You may not be able to do so, but that's

5  the fair thing.  I'm here to do the fair thing, not what the

6  lawyers think is a fair thing.

7      Anyway, thank you.  You can be seated.  That's how I know

8  going to take that into account.

9      So I'm not taking it into account for purposes of the loss

10 calculation, and I'm not taking it into account for purposes of

11 the 3553(a) other factors because they are -- but I am going to

12 permit counsel to participate in the restitution hearing, which

13 will take place within 90 days.

14         **MR. SCHATZ:**  Thank you, Your Honor.

15         **THE COURT:**  And we'll set the date before you leave.

16         **MR. SCHATZ:**  Thank you, Your Honor.

17         **THE COURT:**  All right.  So let me get back to

18 sentencing.  All right.  Let me get back to that aspect of the

19 sentencing.

20     So the objections to the Presentence Report,

21 Mr. Rappaport?

22         **MR. RAPPAPORT:**  None on behalf of defense.

23         **THE COURT:**  The Government?  The Government objects

24 to the inclusion of the departure and variance noted in Part F.

25     Well, you're right.  In other words, it does -- well, no.

```
 1   I think you're wrong.  It certainly -- you say two things.  It
 2   doesn't warrant a departure.
 3            MS. CADET:  Yes, Your Honor.
 4            THE COURT:  You're correct.  It does not warrant a
 5   departure.
 6        Does it warrant a variance?  It could.  Saying it could.
 7        The interesting thing is that if -- that if in looking at
 8   it from a point of view of a variance, on that basis, if I did
 9   take it into account, it would put the defendant in a
10   different -- if I gave him complete credit for it, it would put
11   him in a different Adjusted Offense Level.
12        Because if you netted it out, it would be less than
13   150,000.  And if you did that, it would be down two points.
14   And the Guideline range instead of being 21 to 20 -- whatever
15   it is, 27 months, would be --
16            MR. RAPPAPORT:  Just for the Court's edification,
17   both the Government and Defense have agreed that the loss is to
18   be used -- the loss of $230,000 is to be used for Guideline
19   calculations here, but not for the restitution, separate and
20   apart from Terry Kleid's issue.
21            THE COURT:  Well, but is there an agreement with
22   respect to whether it can be considered for purposes of a
23   variance?
24            MR. RAPPAPORT:  No.
25            THE COURT:  There is no mention of that.
```

1          **MR. RAPPAPORT:**  There was no mention of that.  That's

2    correct.

3          **THE COURT:**  So in other words, instead of Adjusted

4    Offense Level -- what do we have, 16.

5          **MR. RAPPAPORT:**  Sixteen.

6          **THE COURT:**  It would be 14, and the range would be 15

7    to 21 months instead of 21 to 27.

8          **MS. CADET:**  The parties did agree upon the --

9          **THE COURT:**  Sorry?

10          **MS. CADET:**  The parties did agree upon the Guidelines

11    calculations as set forth in the Plea Agreement and that did

12    not involve a variance.

13          **MR. RAPPAPORT:**  That's correct.  That's what I was

14    telling the Court, is that --

15          **THE COURT:**  I know it didn't involve a variance, but

16    a variance is not a Guideline calculation.

17       A variance is once the Guideline calculation is achieved,

18    whether or not you then vary from the Guidelines.  That's why

19    the word "variance" is there.

20          **MR. RAPPAPORT:**  Yes.

21          **MS. CADET:**  Yes, Your Honor.

22          **THE COURT:**  And there is no discussion of that.

23          **MR. RAPPAPORT:**  Correct.

24          **MS. CADET:**  Correct.

25          **THE COURT:**  Okay.  All right.  Now, let me tell you

 1   what I -- I've spent a lot of time on this, as you well know,

 2   and it is my view that this case deserves a departure under

 3   5H1.6., which, of course, neither party really raises directly.

 4   But I think a departure is warranted.

 5       And a departure under 5H1.6, as we all know, talks about

 6   extraordinary family responsibilities and ties.  And under

 7   Application Note 1(b)(i) through small (iv), four, there are

 8   four conditions for departure under this guideline.  And I have

 9   looked at those conditions, and I have looked at the

10   Presentence Report, and I have looked at the submissions of the

11   parties.  I find that they are all satisfied.  And, therefore,

12   I am going to -- I am going to depart on that basis.

13       So I don't think there needs to be an extended discussion,

14   having recognized what I think is the true essence of the

15   parties' position here.  But, of course, I will hear any

16   further discussion that the parties want to make in connection

17   with sentencing.

18           **MR. RAPPAPORT:**  May I ask what the Court's intended

19   resolution is?

20           **THE COURT:**  That's a fair question.  I intend to put

21   the defendant on probation.  And I intend to -- as a condition

22   of probation, I am going to give him some period of confinement

23   in a halfway house or residential center.  I am going to impose

24   additional conditions, such as home detention.

25       You know, sentencing is highly individualized.  I think

1    for the reasons that the departure, 5H1.6, points out, that it

2    would have a devastating effect on his wife and on his family.

3         What he did was unforgivable, but it's -- it ought not be,

4    in my view, a terminal offense.  I think it's much more

5    important that he be punished appropriately and make

6    restitution.

7         There are a number of victims, and we'll get to that, who

8    are deserving of having their money back.  And I think that

9    that's a -- that's a course that in this particular case I

10   think ought to be followed.  And I think, really, the

11   Government doesn't disagree with that.

12        **MS. CADET:**  Your Honor, yes.  The Government does not

13   challenge your end goal.

14        I do have a question in terms of how we characterize how

15   the Court gets there.  I would note that the Plea Agreement

16   provides that the Defense would not request a downward

17   departure, but that they may seek a downward variance.

18        And so I'm wondering to the extent that the parties have

19   agreed to an Adjusted Offense Level of 16, is there a way that

20   we can move forward with the Guidelines as agreed to by the

21   parties and as found by Probation?

22        **THE COURT:**  I need to look at the Plea Agreement.  Do

23   we have the Plea Agreement?  Somebody hand up the Plea

24   Agreement to me.

25        **MS. CADET:**  Sure.

1              (Whereupon document was tendered to the Court.)

2              **MS. CADET:**  So the parties agreed to an Adjusted

3     Offense Level of 16.

4              **THE COURT:**  They did.

5              **MS. CADET:**  And it appears that that's what Probation

6     suggested as well.

7         So the Government would suggest that the Guidelines be

8     calculated in that way and that the -- the ultimate decision

9     that the Court wants to make, if it can be done with respect to

10    a variance, which is what the parties have agreed.

11             **THE COURT:**  That's what the parties suggest.

12             **MS. CADET:**  Right.

13             **THE COURT:**  Well, I disagree.  The parties -- this is

14    a (b) plea.  I'm not bound by what the parties say.

15        And the proper language in the Plea Agreement should have

16    been, in my view, that the Defense can request a departure

17    under 5H1 and the Government could object.  That's the way to

18    do it.  This is -- this would just be a subterfuge using a

19    different word called "variance" instead of "departure."  It

20    would be a subterfuge.  It wouldn't fool anybody.  It certainly

21    wouldn't fool the Sentencing Commission, and it's not fooling

22    me.  Because the right term is "departure."  It's right in the

23    Guidelines.

24             **MS. CADET:**  Understood, Your Honor.

25             **THE COURT:**  Okay.  Anything else?

 1            **MR. RAPPAPORT:**  No, Your Honor.

 2            **THE COURT:**  Do you want to address the Court?  You

 3    can, if you wish.

 4            **THE DEFENDANT:**  Thank you, Your Honor.

 5        Umm, I -- I just want to say before I leave that I promise

 6    that I will make full restitution and that going -- you know,

 7    and that I've -- I don't know how to say this.  But I promise I

 8    will make full restitution, and I thank you for caring about my

 9    family, and I'm --

10            **THE COURT:**  I do think you owe apology to all the

11    victims.

12            **THE DEFENDANT:**  Excuse me?

13            **THE COURT:**  I think you owe an apology to all the

14    victims.

15            **THE DEFENDANT:**  Well, of course.  I have a statement,

16    but I wasn't sure --

17            **THE COURT:**  I think you should read it.

18            **THE DEFENDANT:**  I wrote this out.

19        Even without reading the victim impact statements, I

20    understood how I had hurt people financially and, more

21    important, how I had breached their trust.  But when I read the

22    statements what I had understood intellectually, I now felt

23    emotionally.

24        Going forward I may not be able to restore their trust,

25    but I can make restitution.  I understand that this is part of

1    my legal requirement, but I am making a commitment in the

2    courtroom that I will not leave this world without making it

3    right to the homeowners associations and to my wife, who I've

4    hurt far worse than myself.

5          Umm, I'm not going to go into the -- okay.  I have had

6    discussions with my therapist, my rabbi, my wife and friends,

7    and I would like to realize the factors which made me do wrong

8    and hurt people.  I realized I did not want my wife to suffer

9    any more loss.  She had been suffering from the death of our

10   son.  I did not want her to worry about our financial future.

11   Ironically I have made it worse, and it all happened anyway.

12         I am -- and I now -- I just turned 70 last month.  And as

13   I head off into what I call my sunset years, I reiterate that I

14   wish to have the opportunity to make it right to all the

15   victims and that any way I can say that I'm so sorry for my

16   actions; that, you know, I hurt people.  I didn't want to hurt

17   people.  I never wanted to hurt people.  I've always tried to

18   help.  And I lost my way.  And I'm so sorry.

19              **THE COURT:**  Okay.  Thank you.

20         So as indicated, pursuant to the Sentencing Reform Act of

21   1984 it is the judgment of the Court that Steven Brown is

22   hereby placed on Probation for a period of five years.

23         While on probation you shall not commit another federal,

24   state or local crime.  Shall comply with the standard

25   conditions that have been adopted by this Court.  The drug

1   condition is waived.  And you shall comply with the following

2   special conditions.

3       One --

4           **MR. RAPPAPORT:**  Judge, may we take a time out.  I

5   think his wife is having a medical problem.

6           **THE COURT:**  Oh.  Oh, my.

7           **MR. RAPPAPORT:**  Can we call somebody?

8           **THE COURT:**  Go ahead.  We're in recess.  Please

9   address her.

10      (Brief pause.)

11          **THE COURT:**  Okay.  Back on the record.  Would you

12  want to proceed, Mr. Brown?  Do you want to proceed?

13          **THE DEFENDANT:**  Yes.

14          **THE COURT:**  You want to proceed with the sentencing?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  Okay.  So as a condition of Probation,

17  you must reside for a period of 30 days in a halfway house or

18  residential re-entry center and shall observe the rulings of

19  that facility.

20      You must participate in a location monitoring program as

21  directed by the Probation Officer for a period of 11 months and

22  be monitored by location monitoring technology at the

23  discretion of the Probation Officer.  Location monitoring is to

24  commence after the service of the 30 days in a halfway house.

25      Location monitoring must be utilized to verify your

1    compliance with the curfew while on the program.  You are

2    restricted to your residence every day between the hours set by

3    the Probation Officer.  You must pay part or all the costs of

4    the program based on your ability to pay, as determined by the

5    Probation Officer.

6        You must not maintain a position of fidicuary capacity

7    without the prior permission of the Probation Officer.

8        You must pay any restitution and special assessment that

9    is imposed by this judgment and remains unpaid at the

10   commencement of the term of probation.

11       You must not open any new lines of credit or incur any new

12   debt without the prior permission of the Probation Officer.

13       You must provide the Probation Officer with access to any

14   financial information, including tax returns, and shall

15   authorize the Probation Officer to conduct credit checks and

16   obtain copies of income tax returns.

17       I'm not going to direct the mental health treatment

18   program.

19       You must submit your person, residence, office, vehicle or

20   electronic devices and their data, including cell phones,

21   computers and electronic storage media or any property under

22   your control to a search.  Such a search shall be conducted by

23   a U.S. Probation Officer or any federal, state or local law

24   enforcement officer at any time with or without suspicion.

25   Failure to submit to such a search may be grounds for

 1  revocation.  You must warn any residents that the premises

 2  maybe subject to searches.

 3      You must cooperate in the collection of DNA as directed by

 4  the Probation Officer.

 5      It is further ordered that you shall pay to the United

 6  States a special assessment of $100.  Payment shall be made to

 7  the Clerk of U.S. District Court, 450 Golden Gate Avenue, Box

 8  36060, San Francisco, California 94102.  That amount is due

 9  immediately.

10      The Court finds that the defendant does not have the

11  ability to pay a fine and orders that it be waived.

12      It is further ordered that the defendant shall pay

13  restitution.  The amount of restitution and the victims shall

14  be determined within the next 90 days, either by way of

15  stipulation or by hearing.

16      Obviously, as I've indicated to counsel for Terry Kleid,

17  that he shall be permitted to participate in a restitution

18  hearing and be heard in that hearing as to whether or not his

19  client is -- can be appropriately considered a victim of the

20  criminal offense and whether, if so, how much restitution shall

21  be ordered in her favor.

22      A restitution hearing is to occur on -- let's do 90 days

23  out.

24          **MR. RAPPAPORT:**  Do we want to just set a status date

25  about 30 days out?

1           Mr. Schatz can provide me with any and all documentation.

2    If he is correct, there is a very real possibility we will

3    agree.  I don't believe he is correct.  If not, then we can set

4    a hearing.

5                THE COURT:  Let's set a status.  That's a very good

6    idea.  Let's set a status.

7                THE CLERK:  December 18th at 1:30.

8                MR. RAPPAPORT:  Yes.  I have a matter in front of

9    Judge Chen at 2:30.

10               THE COURT:  You'll be free.

11               MR. RAPPAPORT:  Okay.  1:30 it is.

12               THE COURT:  Next door.

13               MR. RAPPAPORT:  Does that work for you, sir?

14               THE COURT:  December 18?  Is that enough time, sir?

15               MR. SCHATZ:  I think that -- if I heard you

16   correctly, you said December 18th?  Is that what you said?

17               THE COURT:  Yes.  Is that all right?

18               MR. SCHATZ:  Well, the matter has been stayed.

19               THE COURT:  I'm not going to stay the restitution.

20   In other words, I'm going to order restitution and give you the

21   opportunity to make whatever argument you want to make with

22   respect to whether your client should be included as a

23   restitution victim.

24               MR. SCHATZ:  But can we make that a little later than

25   December 18th?  I'm thinking about January.

```
 1              THE COURT:  We can do it in January.

 2              MR. SCHATZ:  Maybe January or February.

 3              THE COURT:  Let's do it towards the end of January,

 4    okay?

 5              MR. SCHATZ:  Okay.

 6              THE COURT:  I'm going to have the defendant

 7    surrender -- well, he can voluntarily surrender.  I'm not going

 8    to do it until January and so forth over the holidays.

 9              THE CLERK:  January 22nd?

10              THE COURT:  You are to surrender for placement in a

11    facility on or before -- how should we do this.  He resides in

12    San Mateo.

13              PROBATION OFFICER:  Your Honor, I have been informed

14    that there won't be bed space until approximately February.  I

15    would say "report as directed by the Probation Office."

16              THE COURT:  Yes.  That will be the order.

17        So you will get an order, direction from the Probation

18    Office as to where to go and when to go.  All right?  But it

19    won't be until February of next year.

20              THE DEFENDANT:  I understand.

21              THE COURT:  Yes.

22              MR. RAPPAPORT:  A date for status on the restitution?

23              THE COURT:  Let's do it in January.

24              THE CLERK:  January 22nd at 1:30.

25              THE COURT:  Is that all right?
```

1          MR. SCHATZ:  Yes, sir.

2          MR. RAPPAPORT:  Just give me a second, please.

3          THE COURT:  Thank you very much.

4          MR. RAPPAPORT:  That would be fine.

5          THE COURT:  Thank you.

6          MS. CADET:  Fine with the Government.

7          PROBATION OFFICER:  Thank you, Your Honor.

8          MR. SCHATZ:  Thank you, Your Honor.

9          THE COURT:  Okay.  All done.

10      (Proceedings adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**<u>CERTIFICATE OF OFFICIAL REPORTER</u>**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, February 4, 2021